UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CHRISTOPHER SHAWN WALTON,   )
                            )
            Petitioner,     )
                            )   Case No. 1:04-cv-351
                            )   (1:01-cr-90)
v.                          )   *Edgar*
                            )
UNITED STATES OF AMERICA,   )
                            )
            Respondent.     )

**MEMORANDUM**

Petitioner Christopher Shawn Walton has filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. [Court Doc. No. 1]. The Government opposes Walton's motion. [Court Doc. No. 6]. As stated *infra*, this court has concluded that a hearing is not necessary and that Walton's Section 2255 motion is without merit and will be **DENIED**.

**I.    Procedural History**

On June 13, 2001, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a five count indictment against Walton charging him with two counts of drug trafficking, possession of a firearm, and intimidating a witness. On September 12, 2001 the grand jury issued a superseding indictment that corrected the dates for the fourth and fifth counts.

Counts One and Two of the superseding indictment charged that on May 18, 2001, Walton possessed with the intent to distribute in excess of five grams of cocaine base and in excess of five hundred grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Count Three charged that Walton possessed a firearm relating to the drug trafficking offenses of

Counts One and Two in violation of 18 U.S.C. § 924(c). Count Four of the superseding indictment charged that on May 25, 2001 Walton intimidated a witness in violation of 18 U.S.C. § 1512. Count Five of the superseding indictment charged that on May 25, 2001 Walton threatened bodily injury to a witness in violation of 18 U.S.C. § 1513.

On September 19, 2001 a jury found Walton guilty on Counts One, Two, Three, and Five of the superseding indictment. The jury found Walton not guilty on Count Four. On March 11, 2002 Walton appeared before the court for sentencing. He received a sentence of 210 months of imprisonment on Counts One, Two, and Five to run concurrently and a mandatory consecutive 60-month sentence on the Count Three conviction. Judgment Proceedings, pp. 18-20.

Walton appealed his conviction and sentence to the Sixth Circuit Court of Appeals, and the Sixth Circuit affirmed the district court. *See United States v. Walton*, 68 F.App'x 591 (6th Cir. 2003). Walton filed a petition for certiorari to the U.S. Supreme Court, which the Supreme Court denied. *See Walton v. United States*, 540 U.S. 994, 124 S.Ct. 494, 157 L.Ed.2d 393 (2003).

Walton timely filed his Section 2255 motion. In his motion Walton raises three arguments. He claims that his trial counsel and his counsel on appeal were ineffective due to their: (1) failure to object to this court's use of the computation of drugs found in the Presentence Investigation Report ("PSR") for imposition of his sentence when the jury had not found the amount of drugs listed in the PSR beyond a reasonable doubt; (2) failure to object to the untruthful testimony of a government witness; and (3) failure to object to the government's improper vouching for the same government witness.

## II.     Standard of Review

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see also, Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). As the Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Petitioner Walton has already exhausted his avenues of direct appeal, and he is now seeking collateral review for what he claims to have been ineffective assistance of counsel. The Sixth Circuit has held that "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict. It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)). Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Further,

> [w]hen a section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed precluded, or (2) that he is actually innocent of the subject offense.

*Fair*, 157 F.3d at 430 (citing *Bouseley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998) (other citations omitted)).

### III. Factual Background

The following facts are taken from the PSR prepared by the United States Probation Office:

> 9. On May 18, 2001, officers of the Chattanooga, Tennessee Police Department executed a search warrant on an apartment located at 714 Hooker Road in Chattanooga. The apartment was in the name of Lakisha Brown, the defendant's girlfriend. At the time of the search, officers found Ms. Brown, the defendant, and two other individuals named Recus Dejuan Langston and Jermaine LaDale Walton (the defendant's brother) in the apartment. From the apartment, officers seized 32.1 grams and 50.7 grams of marijuana, 9.4 grams of cocaine base, 1,088.5 grams of cocaine, and over $36,000 in cash. With the kilogram of cocaine, officers found a loaded 10 mm Glock semi-automatic pistol.
> 10. After the discovery of the items reflected above, the defendant denied living with his girlfriend Lakisha Brown at the 714 Hooker Road apartment. He continued this denial, even though officers found mail addressed to the defendant at the 714 Hooker Road address. Also after his arrest, the defendant asked one of the arresting officers "who is your friend?" The officer took that as a reference to a Confidential Informant used in the case, and that it could be considered a veil [sic] threat.
> 11. Approximately one week after his arrest, the defendant appeared in state court in Chattanooga, Tennessee on May 25, 2001, so charges for the instant offense could be dismissed in lieu of federal charges. While in the court room, the defendant turned to one of the arresting officers and stated "you're going to die, mother [f____]."
> 12. While in custody, the defendant tried to persuade his girlfriend to take responsibility for the weapon seized in this case. She refused, and when questioned by authorities, she told officers of the defendant's request.
> 13. During the defendant's trial in this case, a witness (Thomas Atkins) testified that at around the time of the instant offense, he accompanied the

> defendant to Atlanta and obtained 7 kilograms of cocaine. Mr. Atkins admitted being the middle man for the defendant and the source of the cocaine.
> 14. This case involves cocaine, cocaine base, marijuana, and a large sum of cash. Thomas Atkins testified to the Court and to the jury that he helped the defendant acquire seven kilograms of cocaine. In an effort to avoid double counting, the amounts of cocaine seized in this case will be considered a part of the seven kilograms testified to by Mr. Atkins. The seven kilograms of cocaine should be reduced by 9.4 grams, the amount of cocaine base in this case. It is not unreasonable to believe that the cocaine base was made from the 7 kilograms of cocaine testified to by Mr. Atkins. Also, the cash seized in this case will not be converted to a cocaine equivalent, since the monies could be proceeds from the seven kilograms of cocaine testified to by Mr. Atkins.
> 15. Therefore, the instant offense involves 6,990.6 grams of cocaine (equivalent to 1,398.12 kilograms of marijuana), 9.4 grams of cocaine base (equivalent to 188 kilograms of marijuana), and 50.7 grams of marijuana. The end result is a marijuana equivalent which encompasses all the drugs in this case which totals 1,586.627 kilograms. The 9.4 grams of cocaine base has no guideline effect.

PSR, pp. 3-4.

At the March 11, 2002 sentencing hearing, this court found Walton's criminal history category to be VI with a total offense level of 30. This offense level, combined with the criminal history category of VI, resulted in a total sentence of 270 months with 210 months on Counts One, Two and Five running concurrently and an additional 60 months on Count Three running consecutively. Judgment Proceedings, pp. 18-20. Five years of supervised release follow Walton's sentence. *Id.* at 19.

## IV. Analysis

Petitioner claims that both his trial counsel and his appellate counsel provided ineffective assistance in three ways: (1) by failing to challenge the court's imposition of sentence due to alleged use of drug amounts that were not found by the jury beyond a reasonable doubt in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) by failing to object to the allegedly false testimony provided by a government witness, Thomas Atkins; and (3) by failing

-5-

to object to the government's alleged improper vouching of Atkins' testimony.

Criminal defendants are entitled to the assistance of counsel for their defense pursuant to the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also*, *Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also, Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

> First a defendant must show that counsel's performance was 'deficient,' involving 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Hofbauer*, 228 F.3d at 702 (quotations omitted).

Walton first alleges that his counsel failed to render effective assistance by failing to object to an alleged increase in penalty for sentencing purposes based on a quantity of drugs not proven to the jury beyond a reasonable doubt relying on *Apprendi*. 530 U.S. 466. In *Apprendi* the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Petitioner further argues that *United*

*States v. Booker*, 543 U.S.220 (2005) and *Blakely v. Washington*, 542 U.S. 296 (2004) also apply to his claims. In *Blakely* the Supreme Court held that the defendant's sentence violated the defendant's Sixth Amendment right to a jury trial where the court sentenced him to prison for more than three years beyond the maximum sentence for the crime to which he confessed based on a disputed issue of fact. 542 U.S. at 313-314. In *Booker* the Supreme Court reaffirmed its holding in *Apprendi* and invalidated provisions of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory, instead making the Guidelines advisory. 543 U.S. at 244-245. The Sixth Circuit has since clarified that *Blakely* claims are now *Booker* claims and *Booker* claims do "not apply retroactively to cases already final on direct review." *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005). Thus, *Booker* does not apply to Walton's Section 2255 motion.

However, even if *Booker* and *Blakely* applied to Walton's claims, his claims would still be without merit because Walton's contentions are not supported by the facts as evidenced in the record. Walton asserts that the court adopted the base offense level of 34 outlined in the PSR. He claims that the court accepted the testimony of a government witness, Thomas Atkins, regarding amounts of drugs Atkins witnessed Walton purchasing during drug purchasing trips to Atlanta in 1998. Walton contends that the court's alleged use of a base offense level of 34 violated *Apprendi* and *Booker* because the offense level was based on a larger quantity of drugs than the amount proven to the jury beyond a reasonable doubt. However, Walton's version of the facts is not borne out by a review of the record.

The PSR recommended a Base Offense Level of 32 due to a drug quantity of marijuana equivalent of 1,586.627 kilograms under the Drug Quantity Table in U.S.S.G. § 2D1.1 which

included amounts about which Atkins testified. The PSR also added two levels to the base offense level for Walton's obstruction of justice pursuant to U.S.S.G. § 3C1.1. Walton does not object to the two level enhancement for the obstruction of justice conviction. However, the court specifically declined to add in any drug quantities based on testimony regarding drug deals Walton conducted in 1998, despite the recommendation in the PSR and the government's argument that including those quantities was appropriate. During the sentencing hearing, the court stated, ". . .the charges in this case, the indictment, are all focused on one particular date." Judgment Proceedings, p. 10. The court also noted, "I'm just a little uncomfortable with giving him the seven kilos based on something that happened in 1998 for sentencing purposes." *Id.* at 11.

The court instead calculated a drug quantity equivalent to 405.7 kilograms of marijuana creating a base offense level of 28. *Id.* at 12-13. The court then added two levels for the obstruction of justice charge for a total base offense level of 30. *Id.* at 13. This created a guideline range of 228 to 270 when the 60-month mandatory consecutive sentence on Count Three was added to the sentence for Counts One, Two, and Five. *Id.* The court made sure that there was no question that the drug quantity added up to at least a level 28. *Id.* at 15. Walton's counsel even stated during the sentencing hearing that "Mr. Walton understands that essentially what has just transpired here is he is being punished for the drugs that were taken on May 18th. . . . [a]nd no other amounts." *Id.*

Thus, Walton's argument that the court took into account drug quantities that Thomas Atkins alleged Walton purchased in 1998 is without merit. The court clearly only considered those quantities of drugs found within Walton's possession on May 18, 2001 as stated in the

superseding indictment. And Walton's counsel clarified for the record that Walton was only being sentenced for the drugs found in his possession on that date. This was the amount that the jury found beyond a reasonable doubt in their verdict. Thus, Walton's counsel was not ineffective and Walton's argument under *Booker* and *Apprendi* is without merit.

Walton next claims ineffective assistance for his counsel's failure to object to the allegedly false testimony of a government witness, Thomas Atkins. Atkins testified at Walton's trial that he and Walton traveled to Atlanta on "at least seven to eight trips" in 1997 and 1998 to purchase cocaine from a drug connection that Atkins had there. Trial Transcript, Vol. 1, p. 155. Atkins testified that he and Walton would "go at least once, sometimes twice a month." *Id.* Walton alleges that the PSR demonstrated that Walton was incarcerated for much of this time period, that this information was available to his counsel, and that his counsel's failure to object to Atkins' false testimony constituted ineffective assistance of counsel.

Walton provides additional evidence to this court of the dates of his incarceration on various charges during 1997 and 1998. During the trial before Atkins' testimony, the court held a sidebar conference regarding Atkins' expected testimony. The court specifically asked when Walton was in jail during the 1998 time period. Trial Transcript, Vol. 1, p. 148. The prosecutor and Walton's attorney agreed that Walton served eleven months and 29 days beginning sometime at the end of 1998. *Id.* His attorney objected to Atkins' testimony based on the "remoteness issue and time." *Id.* at pp. 148-49. The court determined that:

> using the 404(b) analysis, I do find that these events can be reasonably concluded did occur. And, although, they're not immediately preceding the events charged in this indictment, I think they're relatively near in time. And, also, I think the fact that the defendant has been in jail for part of the time since these prior events occurred, I think that takes away from the remoteness. They certainly relate to, do relate to the subject matter of the case at bar. I think that they're offered for a

>   proper purpose, that being to prove intent. Since we've got a great deal of talk
>   about drugs and fairly large quantities of cocaine involved here, I don't think it's
>   unfairly prejudicial with regard to Rule 403 balancing. And, again, I will give the
>   limiting instruction if the defendant were to request it.

*Id.* at 149-50.

Walton submits additional information to this court regarding the time periods of his incarceration. The PSR also contains information regarding his incarceration during the years of 1997 and 1998. Walton's exhibit, a sheet summarizing Walton's offenses, commitment dates, and release dates, indicates that Walton was incarcerated for the following periods of time:

>   July 29, 1996 to January 29, 1997;
>   March 4, 1997 to March 4, 1997;
>   March 26, 1997 to September 23, 1997;
>   December 16, 1997 to December 16, 1997;
>   January 31, 1998 to February 5, 1998;
>   February 21, 1998 to February 23, 1998;
>   March 9, 1998 to March 9, 1998;
>   August 26, 1998 to August 27, 1998;
>   August 29, 1998 to August 31, 1998;
>   December 14, 1998 to December 14, 1998.

[Court Doc. 8-2].

The PSR is less clear regarding what precise dates Mr. Walton was incarcerated, but it is clear that he received several sentences of imprisonment during the 1997 and 1998 years. However, even Mr. Walton's own exhibit demonstrates that he was free from prison for several months in 1997 and 1998. Walton asserts that the PSR demonstrates that he was in prison for most of 1997 on simple assault charges. Although the PSR does indicate that Walton was sentenced to eleven months and 29 days of imprisonment for an assault, it is unclear when Walton served that time and how much of the sentence he served. PSR, p. 8. The PSR and Walton's exhibit both demonstrate that Walton was free from imprisonment in 1997 and 1998

for enough time to travel to Atlanta on several occasions with Atkins to purchase cocaine. Atkins' testimony, therefore, was not obviously false.

Further, the colloquy with the court prior to Atkins' testimony indicates that Walton's counsel raised the issue of timing and remoteness with respect to Atkins' testimony. The court even considered when Walton had been in jail during the relevant time period. Trial Transcript, Vol. 1, p. 148. Thus, Walton's counsel was not ineffective because he discussed these issues with the court prior to Atkins' testimony, and the court considered Walton's periods of incarceration. In addition, Walton himself admitted that he was dealing drugs during 1998. Trial Transcript, Vol. 1, p. 230. Thus, Walton had to have been free from prison in 1998 long enough to sell some undetermined amount of cocaine. Walton's claim of ineffective assistance of counsel due to his counsel's alleged failure to object to Atkins' testimony is without merit.

Walton finally argues that the government improperly vouched for Thomas Atkins' testimony and that his counsel's failure to object to such improper vouching at trial or at the appellate level constitutes ineffective assistance of counsel. At the beginning of Atkins' testimony at trial, the following exchange occurred between the prosecutor and Atkins:

> Q     Okay. And you received 100-month sentence, is that right?
> A     Correct.
> Q     And you signed a cooperation plea agreement with the government?
> A     Correct.
> Q     What do you understand that cooperation means?
> A     To be truthful in my forthcoming and to testify in any case the government asks me to as long as I be truthful. . . .
> Q     Now, what do you understand, what do you hope happens as a result of your testimony here today?
> A     Hopefully I get some leniency on my time.
> Q     Get some time cut?
> A     Correct.
> Q     How does that happen, do you know?
> A     No. I don't really, just up to the judge.

> Q	Okay. Do you know who has to ask the judge to get your time cut?
> A	No.
> Q	Okay. Do you know if the judge has to cut your time?
> A	He doesn't have to.
> Q	All right. What happens if you don't tell the truth here today, Mr. Atkins?
> A	I could be charged, charges could be brought against me for perjury and other charges.
> Q	What would happen as a result of that?
> A	Time would be added instead of taken away.

Trial Transcript, Vol. 1, pp. 152-53. In his closing argument the prosecutor asserted:

> Thomas Atkins stated that he went to Atlanta in 1997 and 1998 and they purchased together roughly eight kilos of powder cocaine. That's what Atkins said. Mr. Walton got eight kilos. And the Court is going to instruct you, you can only use that to determine the intent of the defendant in this crime. But I submit to you all the intent is a very important issue. That, in fact, he did go to Atlanta. Thomas Atkins got up here and told you, and I told you in the beginning, he's a convicted federal defendant, he's got a cooperation plea agreement. Judge Edgar is going to tell you to view that testimony with more caution. We're not coming in here and saying convict Christopher Shawn Walton because Thomas Atkins is testifying against him. We're telling you that's one small piece, but it does help us show intent.

Trial Transcript, Vol. 2, p. 250.

Walton contends that during his direct examination of Atkins and during his closing argument, the prosecutor improperly vouched for Atkins' testimony. The Sixth Circuit has explained that "[i]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). References to a plea agreement may in some circumstances result in improper vouching, but as the Sixth Circuit explained in *Francis*,

> [w]e have allowed a prosecutor to refer to the plea agreement of a testifying witness. The prosecutor may elicit testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility. The

> potential for impropriety emerges, however, when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to. Because that recommendation is dependent upon whether the witness testifies truthfully, it is easy for a prosecutor to imply, either intentionally or inadvertently, that the prosecutor is in a special position to ascertain whether the witness was, in fact, testifying truthfully.

*Id.* (citations omitted). In *Francis* the Sixth Circuit found improper vouching where the prosecutor emphasized to the jury her willingness to enter into a plea agreement with the cooperating witness only after the prosecutor personally believed in the truthfulness of the witness' story. *Id.* at 551.

In the present action, the prosecutor's questions for Mr. Atkins regarding his plea agreement do not indicate his personal belief in the validity of Mr. Atkins' testimony. The prosecutor did not elicit from Atkins that the prosecutor is the one who will recommend to the court that his time be reduced. The prosecutor merely elicited that Atkins has a plea agreement with the potential to have his time reduced due to his cooperation with the government. This action is more akin to the situation present in *United States v. Trujillo*, in which the prosecutor did not supply any personal opinion regarding the truth of the witnesses' statements and the prosecutor's comments merely addressed the terms of the witnesses' plea agreements. 376 F.3d 593, 608-09 (6th Cir. 2004).

The prosecutor's closing arguments in this case actually emphasized reasons why Mr. Atkins' testimony should be viewed with caution because Atkins was a convicted felon with a cooperation agreement and his testimony only pertained to Mr. Walton's intent to commit the 2001 crimes with which he was charged. No improper vouching occurred in this case, and thus, Walton's allegation of prosecutorial misconduct is without merit. In addition, Walton did not receive ineffective assistance of counsel because no improper vouching occurred to which his

counsel should have objected.

**V.     Conclusion**

For the reasons stated *supra*, Mr. Walton's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is **DENIED**.  This matter is dismissed with prejudice.

A separate judgment will enter.


                                    */s/ R. Allan Edgar*
                                R. ALLAN EDGAR
                        UNITED STATES DISTRICT JUDGE